IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| JANELLE N. MEDLEY,<br><br>Plaintiff,<br><br>v.<br><br>EVOLUTION US LLC and SASHA SANTOS,<br><br>Defendants. | Civil Action No. 25-600<br>(RMB-MJS)<br><br>OPINION |

**RENÉE MARIE BUMB, Chief United States District Judge**

**THIS MATTER** comes before the Court on a Partial Motion to Dismiss filed by Defendants Evolution US LLC ("Evolution") and Sasha Santos ("Santos") (collectively, "Defendants"). [Docket No. 21.] Having considered the parties' submissions, the Court resolves the Motion without oral argument. FED. R. CIV. P. 78(b); D.N.J. LOC. CIV. R. 78.1(b). For the reasons that follow, Defendants' Partial Motion to Dismiss is **GRANTED** and Counts Six and Seven as to Santos in the Amended Complaint are **DISMISSED WITHOUT PREJUDICE**. Plaintiff Janelle N. Medley ("Plaintiff") will be permitted to file a second amended complaint within thirty (30) days to address, in good faith, the deficiencies identified herein.

I.     FACTUAL BACKGROUND

In September 2023, Plaintiff, an African-American woman, began working as a blackjack dealer for Evolution at Hard Rock in Atlantic City, New Jersey. [Am. Compl., at ¶¶ 6, 10–12.] Plaintiff "worked along with approximately fifteen (15) other dealers in the room" and "reported to various managers and/or supervisors." [*Id.*, at ¶¶ 17–18.] "At all

times, managers/supervisors observed Plaintiff performing her duties on surveillance camera." [*Id.*, at ¶ 20.]

In January 2024, Plaintiff took on the additional role of poker dealer, by which she started "working closely with" Santos, a two-year employee of Puerto Rican descent. [*Id.*, at ¶¶ 24–27.] Santos was initially "kind to Plaintiff, but short[l]y after starting making discriminatory comments, which Plaintiff found to be highly inappropriate." [*Id.*, at ¶ 28.] For example, Santos opined that a certain African-American hairdresser was "pretty for a black girl" given that, in her view, "Black people are ugly!" [*Id.*, at ¶¶ 29–30.] And, when asked by Plaintiff if she would allow an order of lipstick to be delivered at her home, Santos responded, "I can't let your lipstick come to my house, because it is coming from Africa!" [*Id.*, at ¶ 32.]

On or about February 4, 2024, Plaintiff "reported … Santos'[s] discriminatory conduct to Daniel Ortega, the supervisor/manager." [*Id.*, at ¶ 34.] Ortega allegedly "saw that Plaintiff was shaken up and nervous when speaking to him, but directed Plaintiff to go back to work at her assigned table," and "took no immediate corrective action to prevent ongoing discriminatory conduct." [*Id.*, at ¶¶ 35–36.] Plaintiff continued working when Santos then "started loudly telling other Evolution employees … 'that bitch [Plaintiff] is going around telling people I am racist!'" [*Id.*, at ¶¶ 37–38.] Later that day, "as … Santos and Plaintiff were in the room with at least fifteen (15) other dealers, plus supervisors and/or managers, … Santos yelled across the room to Ortega, 'You'd better come get this bitch [Plaintiff] before I punch her in her face. This bitch is telling people I am racist!'" [*Id.*, at ¶ 39.] Plaintiff alleges that "the management of Evolution witnessed … Santos'[s] conduct, but again took no immediate corrective action to prevent the ongoing discriminatory conduct." [*Id.*, at ¶ 40.]

2

That same day, Plaintiff "submitted a hand-written incident report about the foregoing to Daniel Ortega and Yan, the trainer," to which Plaintiff "was told that she was suspended pending investigation." [*Id.*, at ¶¶ 41–42.] Following radio silence during the investigation, Plaintiff was able to arrange a meeting with two human resource representatives for February 5, 2024. [*Id.*, at ¶¶ 43–45.] During the meeting, Plaintiff "again complained about … Santos'[s] discriminatory comments and retaliatory conduct." [*Id.*, at ¶ 46.] The representatives allegedly asked Plaintiff if she "would be comfortable working along with … Santos", to which she answered no. [*Id.*, at ¶ 48.] Plaintiff "never heard back from" human resources and Evolution ultimately terminated her, while Santos kept her job. [*Id.*, at ¶¶ 51, 55.]

## II.   PROCEDURAL HISTORY

On January 17, 2025, Plaintiff initiated this action, setting forth the following employment discrimination claims against Evolution and Santos: Title VII discrimination, hostile work environment, and retaliation against Evolution; discrimination, hostile work environment, and retaliation under the New Jersey Law Against Discrimination ("LAD") against Defendants; and retaliation under the New Jersey Conscientious Employee Protection Act ("CEPA"). [Compl., at ¶¶ 64–86.] On April 28, 2025, Plaintiff filed the operative Amended Complaint, dropping the LAD discrimination and hostile work environment claims against Santos. [Am. Compl., at ¶¶ 64–86.] Defendants have now timely moved to dismiss the remaining LAD and CEPA retaliations claim against Santos pursuant to Rule 12(b)(6). *See* [Docket No. 21.] The Motion is fully briefed and ready for review. [Docket Nos. 21-1 ("Defs.' Br."), 22 ("Pl.'s Opp. Br."), 23 ("Defs.' Reply Br.").]

3

### III.   JURISDICTION

The Court exercises federal question jurisdiction over Plaintiff's Title VII claims and supplemental jurisdiction over the LAD and CEPA claims disputed in the instant Motion. *See* 28 U.S.C. §§ 1331, 1367.  The parties agree that this Court shall review the supplemental jurisdiction claims under New Jersey substantive law.  *See* [Def.'s Br.; Pl.'s Opp. Br.]; *Pinkston v. City of Jersey City*, 699 F. Supp. 3d 298, 301 n.12 (D.N.J. 2023) (internal citation omitted) ("A federal district court ... exercising supplemental jurisdiction over state law causes of action must apply the applicable substantive law of the State as interpreted by the State's highest court.").

### IV.   LEGAL STANDARD[1]

Federal Rule of Civil Procedure 8(a) requires plaintiffs to plead "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2). A party may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 552 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *id.* at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

---

[1] Plaintiff argues firstly that Defendants are erroneously moving for dismissal under a summary-judgment standard because they "cite to summary-judgment decisions."  [Pl.'s Opp. Br., at 3.] Defendants are contriving no such thing and simply refer the Court to these decisions to provide the underlying legal principles with which to review Plaintiff's claims under the applicable 12(b)(6) standard of review.  *See* [Def.'s Reply Br., at 1–2.]

When considering a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a district court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Evancho v. Fisher*, 423 F.3d 347, 350–51 (3d Cir. 2005) (internal citations omitted). "However, a court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss." *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)). A court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). The proper role of the district court in reviewing the sufficiency of a complaint is thus limited: the issue is not "whether the plaintiffs will ultimately prevail" but "whether they are entitled to offer evidence to support their claims." *Langford v. City of Atl. City*, 235 F.3d 845, 847 (3d Cir. 2000). "When presenting a Rule 12(b)(6) motion, the defendant bears the burden to show that the plaintiff has not stated a claim." *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016) (citation omitted).

V.   **DISCUSSION**

Based on her alleged conduct, Plaintiff claims that Santos violated the LAD and CEPA "by retaliating against [her] for opposing … Defendants' discriminatory practices." [Am. Compl., at ¶¶ 80, 85.] Defendants, in turn, seek to dismiss Plaintiff's LAD and CEPA retaliations claims brought against Santos, principally arguing that, as alleged, Santos is a nonsupervisory coworker who was not acting on behalf of Evolution or with its consent. *See* [Defs.' Br., at 4–10.]

5

### A. The LAD

Plaintiff proceeds on her LAD retaliation claim under two theories of liability: the conventional adverse employment action framework and an alternative theory of retaliatory harassment. [Pl.'s Opp. Br., at 5–7.] Irrespective of the theory, Defendants posit that LAD liability cannot lie against Santos because she is not alleged to have had "supervisory duties and was just another employee working with Plaintiff and would have had no role in the decision-making process." [Defs.' Br., at 5.] Plaintiff disputes this articulation of the law and argues that she has stated a viable claim of retaliation against Santos. *See* [Pl.'s Opp. Br., at 5–7.]

The LAD was enacted "for the protection of the public safety, health and morals and to promote the general welfare and in fulfillment of the provisions of the Constitution of this State guaranteeing civil rights." N.J. STAT. ANN. 10:5-2. Those protections make it unlawful to retaliate against or intimidate any individual because he or she has opposed any act or practice made unlawful by the LAD. *See id.,* § 10:5–12(d). "To prevail on a [NJLAD] retaliation claim, a plaintiff must demonstrate that (1) they engaged in a protected activity; (2) they were subject to an adverse action after engaging in that activity; and that (3) there is a causal link between the protected activity and the adverse action." *Herrera v. Quality Chevrolet GMC of Englewood, Inc.*, No. CV 24-08536, 2025 WL 1793333, at *6 (D.N.J. June 30, 2025) (internal citations omitted).

"There is no direct *primary* individual liability under the NJLAD." *Gibbs v. Massey*, No. CV 07-3604 (PGS), 2009 WL 838138, at *4 (D.N.J. Mar. 26, 2009) (emphasis in original) (citing *Cicchetti v. Morris Cty. Sheriff's Off.*, 947 A.2d 626, 645 (N.J. 2008)). The LAD instead imposes secondary liability for "any person, whether an employer or an employee or not, to

6

aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so." *Hurley v. Atl. City Police Dep't* 174 F.3d 95, 126 (3d. Cir. 1999) (citing N.J. STAT. ANN. 10:5–12(e)); *see also id.* ("However, individuals may be liable secondarily under an aiding and abetting theory of liability."). To state a claim for aiding and abetting, a plaintiff must plausibly allege that: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation." *Lauto v. Dover Pub. Sch. Dist.*, No. 21-18246 (SDW) (ESK), 2022 WL 3646573, at *6 (D.N.J. Aug. 24, 2022) (quoting *Cicchetti*, A.2d at 645).

But can a nonsupervisory coworker be held liable for aiding and abetting a violation of the LAD? In *Hurley*, the Third Circuit answered in the negative, albeit in a predictive manner:

> We predict that, under New Jersey law, a nonsupervisory employee cannot be held liable as an aider and abettor for his own affirmative acts of harassment, because such affirmative acts do not substantially assist the employer in its wrong, which is its failure to prevent and redress harassment by individual employees. Rather, a nonsupervisory employee's harassment takes advantage of the employer's wrongful conduct; it is the employee who seems to be "aided and abetted" by the employer. A supervisor, by contrast, may be liable as an aider and abettor for active harassment or knowing and willful inaction, because in either case the supervisor violates his or her duty as a supervisor to prevent and halt harassment.

174 F.3d at 129.[2]  Since *Hurley*, this District has routinely interpreted the employment discrimination provisions of the LAD to require that coworkers possess supervisory authority

---

[2] It is worth noting that this Court thrice anticipated *Hurley* in conditioning LAD liability on supervisory authority. *See Braddy v. Jersey Shore Med. Ctr.*, No. CV 85-5770 (AET), 1987 WL 13002, at *2 (D.N.J. June 22, 1987); *Tyson v. CIGNA Corp.*, 918 F. Supp. 836, 837, 840–41 (D.N.J. 1996), *rev'd on other grounds*, *Failla v. City of Passaic*, 146 F.3d 149 (3d Cir. 1998); *Poveromo-Spring v. Exxon Corp.*, 968 F. Supp. 219, 229 (D.N.J. 1997).

7

to be held liable.³  *See, e.g.*, *Ramsey v. Waste Mgmt. of N.J.*, No. CV 24-9401 (RK) (JBD), 2025 WL 43428, at *2 (D.N.J. Jan. 7, 2025) ("Since Budrewicz is not a supervisor …, it stands to reason that the NJLAD cannot apply to him."); *Chowdhury v. Mesa Lab'ys, Inc.*, No. CV 19-21308 (ES) (MAH), 2020 WL 1236812, at *4 (D.N.J. Feb. 20, 2020) ("Courts have interpreted the LAD's aiding-or-abetting provision to impose liability only on those individuals with supervisory roles."), *R & R adopted*, No. CV 19-21308 (ES) (MAH), 2020 WL 1234552 (D.N.J. Mar. 12, 2020); *Ross v. Amazon.com, Inc.*, No. CV 19-1864 (SDW) (LDW), 2019 WL 1227112, at *2 (D.N.J. Mar. 14, 2019) ("Here, the Amended Complaint does not contain any facts to suggest that LaForte ever acted as Plaintiff's supervisor, such that she could be liable for aiding and abetting violations of Plaintiff's rights."); *Reynolds v. Jersey City Dep't of Pub. Works*, No. CV 2:18-1418, 2019 WL 117976, at *5 (D.N.J. Jan. 4, 2019) ("But individual liability is confined to supervisory employees."); *Guarneri v. Buckeye Pipe Line Servs. Co.*, No. CV 14-1131 (JBS/AMD), 2014 WL 1783072, at *2 (D.N.J. May 5, 2014) (dismissing LAD claim because "only employees who have been delegated some degree of supervisory authority can be held

---

³ In *Gibbs*, the court observed "the troubling nature" of *Hurley* in light of the LAD's plain text.  2009 WL 838138, at *4 n.2.  Judge Cowen "persuasively explained in dissent in *Hurley* that under the aiding and abetting statute any employee, be they supervisory or not, could be individually on the hook." *Id.* (citing *Hurley*, 174 F.3d at 141 (Cowen, J., dissenting)).  What is more, it is well understood that the LAD 'is a "remedial" statute, containing "broad language" to be used "as a mechanism to root out the cancer of discrimination."'"  *Nuness v. Simon and Schuster, Inc.*, 325 F. Supp. 3d 535, 545 (D.N.J. 2018) (quoting *Cicchetti*, 947 A.2d 626, 641 (N.J. 2008)); *see also Nini v. Mercer Cnty. Cmty. Coll.*, 995 A.2d 1094, 1100 (N.J. 2010) (internal citations omitted) ("The LAD is remedial social legislation whose overarching goal is to eradicate the 'cancer of discrimination.'  As such, it should be liberally construed.  Indeed, 'this Court has been scrupulous in its insistence that the Law Against Discrimination be applied to the full extent of its facial coverage.'").  But, as recognized in *Gibbs*, "a federal district court is bound by circuit court interpretations of state law absent a strong indication that the state's highest court would decide different."  2009 WL 838138, at *4 n.2 (quoting *Jurinko v. Medical Protective Co.*, No. 03–4053, 2006 WL 1791341, at *4 n. 15 (E.D. Pa. June 23, 2006), *rev'd on other grounds*, 305 F. App'x 13 (3d Cir. 2008)).  The Court sees no reason to deviate from *Gibbs's* finding that a strong indication is "wanting" for the reasons above.  *Id.*; *cf., e.g.*, *Herman v. Coastal Corp.*, 791 A.2d 238, 254 (N.J. Super. Ct. App. Div. 2002) ("In addition to determining whether the employee can be held individually liable for his acts of sexual discrimination and harassment that individual to be liable would have to hold a position of supervisor.").

personally liable under the NJLAD as aiders and abettors"); *Ivan v. Cnty. of Middlesex*, 595 F. Supp. 2d 425, 462 (D.N.J. 2009) ("The LAD does not impose individual liability upon non-supervisory employees, but a supervisor may be liable for aiding and abetting his or her own conduct."); *Gooden v. Twp. of Monroe*, No. CV 05-2472 (RBK), 2008 WL 11509858, at *7 (D.N.J. Apr. 22, 2008) ("Individual non-supervisory employees, even those who commit discriminatory acts, cannot be held liable under the employment discrimination provisions of the LAD."); *Hargrave v. Cnty. of Atl.*, 262 F. Supp. 2d 393, 434–35 (D.N.J. 2003). Plaintiff has not identified for the Court a case that stands athwart this history.

Plaintiff's reliance on *Smart v. Cnty. of Gloucester*, No. CV 20-12408, 2022 WL 37417 (D.N.J. Jan. 3, 2022), is misplaced. [Pl.'s Opp. Br., at 7.] Although it is true that the court denied defendants' 12(b)(6) motion because the plaintiff "was not required to allege that [they] were his employers or supervisors when acting in the manner that forms the basis of his retaliation claim", it failed to address *Hurley* and this District's progeny. *See Smart*, 2022 WL 37417, at *5. Moreover, the court supportively cited to *Tyson* when that case, as footnoted above, foreshadowed *Hurley* by explicitly "hold[ing] that the NJLAD… does not impose liability on non-supervisory employees." *Id.*; *Tyson*, 918 F. Supp. at 837. In any event, the court rectified this oversight at the summary-judgment stage by recognizing *Hurley's* limitation, distinguishing the facts of its case by finding that the co-worker defendants "held a position of authority over Smart in the union", and did not actually resolve whether "their position as members of the union board can be equated to that of a supervisor" because "there are other reasons for my decision to grant summary judgment."[4] *Smart v. Cnty. of Gloucester*,

---

[4] The Court found two additional cases not cited by either party that do not otherwise disturb the District's clear view on this issue. In *DeSantis v. N.J. Transit*, 103 F. Supp. 3d 583, 590–91 (D.N.J. 2015), the Court did not address *Hurley* and this District's similar application and simply assumed that

9

681 F. Supp. 3d 306, 342 n.31 (D.N.J. 2023), *vacated in part on other grounds on reconsideration*, No. 20-CV-12408-RAL, 2024 WL 532092 (D.N.J. Feb. 8, 2024). Neither do *Hurley v. Atl. City Police Dep't*, 933 F. Supp. 396 (D.N.J. 1996), nor *Goldsmith v. E.I. du Pont de Nemours & Co.*, 571 F. Supp. 235 (D. Del. 1983), support Plaintiff's position as the former relevantly involved supervisory defendants while the latter concerned a corporate defendant. *See generally Hurley*, 933 F. Supp. 396; *Goldsmith*, 571 F. Supp. 235.

For over three decades, the Third Circuit and this District have limited aider-and-abettor liability under the LAD to supervisory employees or those delegated some degree of supervisory authority. Because "there's no allegation or inference that can be made that [Santos] was a supervisory employee," Plaintiff's retaliation claim brought under the LAD against Santos fails as a matter of law and must be dismissed.[5] 2009 WL 838138, at *4; *see* [Am. Compl.]

**B. The CEPA**

The CEPA similarly "prohibits employers from taking retaliatory action against an employee who reports on suspected illegal activity." *Illiano v. Wayne Bd. of Educ.*, No. CV 22-114 (SDW) (JBC), 2024 WL 687756, at *4 (D.N.J. Feb. 20, 2024) (citing N.J. STAT. ANN. § 34:19-3). "To state a claim thereunder, a plaintiff must plead the following: (1) he reasonably believed defendants were violating a law, rule, or public policy; (2) that he

---

a nonsupervisory coworker may be held secondarily liable as an aider and abettor under the LAD, before ultimately dismissing the claim pursuant to Rule 12(b)(6). And while *Andre v. Trinity Health Corp.*, No. 1:18-CV-03183-RBK-AMD, 2019 WL 1198959, at *4–*6 (D.N.J. Mar. 14, 2019), extrapolates upon the plain text of the LAD, it does so to extend potential liability to *corporate* defendants, not nonsupervisory coworkers.

[5] Accordingly, there is no compelling reason to address whether Plaintiff plausibly alleges that Santos aided and abetted a LAD violation, or whether retaliatory harassment is a viable alternative theory of liability for a retaliation claim under the LAD.

performed a whistleblowing activity as defined by N.J. STAT. ANN. § 34:19-3; (3) that an adverse employment action was taken against him; and (4) that a causal relationship exists between the whistleblowing activity and the adverse employment action." *Id.* (citing *Puglia v. Elk Pipeline, Inc.*, 141 A.3d 1187, 1200 (N.J. 2016)).

"The CEPA defines an 'employer' as 'any individual, partnership, association, corporation or any person or group of persons acting directly or indirectly on behalf of or in the interest of an employer with the employer's consent.'" *Ludwig v. OwlPoint, LLC*, No. A-0498-22, 2024 WL 3022356, at *6 (N.J. Super. Ct. App. Div. June 17, 2024) (quoting N.J.S.A. 34:19-2(a)). Unlike the LAD, "liability under CEPA 'may attach to individuals who perform retaliatory acts,' even to those who are co-workers or indirect supervisors if they participated in the retaliatory action." *Jacobson v. Charm City Aviation, LLC*, No. CV 24-10013 (MEF)(MAH), 2025 WL 1698086, at *4 (D.N.J. June 2, 2025) (internal citation omitted), *R & R adopted*, No. 24-CV-10013 (MEF)(MAH), 2025 WL 1695079 (D.N.J. June 17, 2025); *see also Curley v. Mercury Ins. Servs., LLC*, No. CV 21-12259 (FLW), 2022 WL 445633, at *4 (D.N.J. Feb. 10, 2022) (internal citation omitted) ("Importantly, relevant here, individual liability is not reserved solely for those who were direct supervisors or directly took the retaliatory action; CEPA liability can also be imposed on individuals, such as indirect supervisors and co-workers who allegedly participated in the retaliatory scheme.").

Defendants accept this point of law; their argument here is that there are no plausible allegations that Santos acted directly or indirectly on behalf of Evolution or with its consent.[6]

---

[6] Defendants do not challenge Plaintiff's CEPA claim in any other manner. *See* [Def.'s Br.; Def.'s Reply Br.]

11

[Defs.' Br., at 8–10.]  The Court agrees.  Plaintiff's three-sentence disputation to the contrary reads as follows:

> In this case, Plaintiff alleged that Santos, in the room with at least 15 other employees, including managers, yelled across the room to tell the manager to come and get "this bitch" (referring to Plaintiff).  Management did nothing to prevent or correct Santos'[s] conduct.  Evolution kept Santos employed, while firing Plaintiff.

[Pl.'s Opp. Br., at 8.]  Thus, as far as the Court understands it, Plaintiff's argument appears to be that Santos made discriminatory comments, Evolution "did nothing to prevent or correct" it, and Plaintiff was fired while Santos remained employed.  [*Id.*]  This does not plausibly allege, much less infer ,that Santos acted as Evolution's agent or with its consent.  To be sure, the purported disparate treatment of Plaintiff may suggest that *Evolution* unlawfully retaliated against her for reporting Santos's discriminatory behavior, but that is a legal inquiry altogether distinct from that implicated by the Motion.

The Court here is tasked with determining whether it is alleged that Santos plausibly comported herself as Evolution's agent when she retaliatorily issued her remarks.  *See, e.g.*, *Cappel v. Cnty. of Essex*, No. CV 22-2226 (JXN) (ESK), 2023 WL 8827477, at *6 (D.N.J. Dec. 21, 2023) ("[T]he requirement of consent simply reflects normal agency *respondeat superior* principles ...."); *see also Curley*, 2022 WL 445633, at *4 (internal citation omitted).  CEPA liability does not lie for any and all conduct which a coworker may undertake at work; instead, "liability 'may attach to individuals who perform retaliatory acts' within the scope of their employment." *McKenna v. Verint Americas Inc.*, No. CV 22-02370 (FLW), 2022 WL 3211422, at *5 (D.N.J. Aug. 9, 2022) (quoting *Southward v. Elizabeth Bd. of Educ.*, No. 15-3699, 2017 WL 111924, at *10 (D.N.J. Jan. 11, 2017)).  Despite reciting the legal definition of scope of employment, Plaintiff does not explain or elaborate on how Santos's alleged incivility in the

presence of supervisors is an "action of the kind [that she] is employed to perform" or "is actuated, at least in part, by a purpose to serve the master." *See* [Pl.'s Opp. Br., at 8 (alterations in original) (quoting *Abbamont v. Piscataway Twp. Bd. of Educ.*, 650 A.2d 958, 963 (N.J. 1994)).]

What Plaintiff is implicitly advocating for is plausible *ipso facto* liability by virtue of an employee acting while on the job. If this position were adopted, each employer would be plausibly liable under the CEPA for the conduct of its employees. Plaintiff's stance, under these circumstances, would effectively impose a far-reaching responsibility on employers to anticipatorily prevent or subsequently correct employee behavior, all in apparent disregard of whether that conduct actually fell within the coworker's scope of employment. New Jersey law demands more. Consequently, the Court will dismiss Plaintiff's claim of retaliation brought under the CEPA against Santos.

### VI.   CONCLUSION

For the foregoing reasons, Defendants' Patial Motion to Dismiss is **GRANTED** and Counts Six and Seven of the Amended Complaint as to Defendant Sasha Santos are **DISMISSED WITHOUT PREJUDICE**. Although it does not appear that a good-faith amendment would address the deficiencies identified herein, Plaintiff shall be permitted to file a second amended complaint within thirty (30) days, if she elects to do so. An accompanying Order shall issue.

**January 15, 2026**　　　　　　　　　　　　　　　　**/s/Renée Marie Bumb**
Date　　　　　　　　　　　　　　　　　　　　　　　RENÉE MARIE BUMB
　　　　　　　　　　　　　　　　　　　　　　　　　Chief United States District Judge